**Donald J. NOVELLA, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

No. 3:04–CV–1213–J–25TEM.

United States District Court, M.D. Florida, Jacksonville Division.

April 19, 2006.

J. Eric Jones, Law Office of J. Eric Jones, P.A., Jacksonville, FL, for Plaintiff.

Amy Reisinger Harrison, Peter Reed Corbin, Ford & Harrison LLP, Jacksonville, FL, for Defendant.

## ORDER

ADAMS, District Judge.

Before the Court are Plaintiff's Motion for Protective Order, Motion to Quash (Dkt.14), Defendant's response thereto (Dkt.25), Defendant's Motion for Summary Judgment (Dkt.15) Plaintiff's response thereto (Dkt.23), and Plaintiff's Motion to Amend the Complaint (Dkt.27).

### I. Undisputed Material Facts

Plaintiff, who is legally deaf, was hired on or about November 23, 2002 by Wal–Mart as an unloader. Defendant's Statement of Facts (DSOF) ¶ 2. During his initial interview, Plaintiff's fiancee, also a Wal–Mart employee, acted as a sign language interpreter for him. DSOF ¶¶ 2, 4.

During his employment, Plaintiff performed all his required tasks as identified in the job description, and received numerous positive performance evaluations. DSOF ¶¶ 5–6. Plaintiff communicated with his supervisors by writing notes or taking visual cues. DSOF ¶ 7.

In May, 2003, several store associates, including Plaintiff began complaining to the Store Manager, Mr. Kastensmidt, about offensive sexual graffiti written on the men's bathroom wall. Wal–Mart would wash off the graffiti, but it would reappear. The graffiti included sexual references about Plaintiff's fiancee as well as three other female employees. This continued to occur over several months. DSOF ¶ 8. Kastensmidt began an investigation to determine who was responsible for the graffiti. The investigation consisted of taking pictures of the graffiti, reviewing surveillance video, analyzing the verbiage used as well as comparing handwriting samples. Kastensmidt determined that Plaintiff was responsible. DSOF ¶ 10.

Kastensmidt decided to terminate Plaintiff and informed him of the decision. DSOF ¶ 11. Kastensmidt presented Plaintiff with the pictures he had used in his investigation. Plaintiff denied being responsible for the drawings. DSOF ¶ 12. Kastensmidt also presented Plaintiff with a written explanation of Plaintiff's termination. Plaintiff initially crumpled the termination notice, threw it in the trash can, and left the office to return to work. DSOF ¶ 13. Plaintiff then returned to Kastenschmidt's office and engaged in a written exchange where he claimed knowledge of who wrote the graffiti, but refused to identify the culprit. Plaintiff was defiant toward management during the meeting. Also during this meeting, Plaintiff requested an interpreter. Kastensmidt proposed suspending the termination until he could get an interpreter, but then, after Defendant became hostile, decided to continue through with the termination. DSOF ¶ 14. After his termination, Plaintiff refused to leave the store, so Kastensmidt contacted police to escort him from the premises. DSOF ¶ 15. The Sheriff's office gave Plaintiff a trespass warning, informing him not to return to the store. DSOF ¶ 15.

Plaintiff is suing Defendant 1) for failure to provide a reasonable accommodation under the American's with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA), 2) for unlawful employment retaliation in violation of Florida Statute § 448.102(3), and 3) for negligent infliction of severe emotional distress. Defendant moves for summary judgment on each count.

## II. Standard of Review

Summary Judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial...There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Chapman v. American Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir.1988) (citations omitted). When a fact dispute admits of only one reasonable answer, a court may grant summary judgment. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court should grant summary judg-

ment when the evidence favoring the non-moving party is merely colorable or is not significantly probative. *Id.* at 249, 106 S.Ct. 2505.

### III. Accommodation

 In order to state a claim of discrimination under the Americans with Disabilities Act and the Florida Civil Rights Act, Plaintiff must make a *prima facie* showing that 1) he has a disability, 2) he is a "qualified individual," and 3) defendant discriminated against him because of his disability. *Reed v. Heil Co.,* 206 F.3d 1055, 1061 (11th Cir.2000). A qualified individual may be discriminated against when his employer does not "reasonably accommodate the disability"—unless such an accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). An accommodation is reasonable and thus required, "only if it enables the employee to perform the essential functions of the job. The ADA defines 'essential functions' to be fundamental job duties of the employment position...." *LaChance v. Duffy's Draft House, Inc.,* 146 F.3d 832, 835 (11th Cir. 1998). Under the ADA, an individual is not entitled to the accommodation of his choice, but only to a "reasonable accommodation." *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 948 (N.D.Ga.1995). The parties agree that Plaintiff is disabled. However, they disagree as to whether he is a "qualified individual." [1] However, the Court need not reach that determination because Defendant had no obligation to provide Plaintiff with an accommodation during his termination proceeding.

 The Court finds that even if Plaintiff was a "qualified individual," De-fendant was not required to provide an accommodation during his termination meeting. The Eleventh Circuit only requires a reasonable accommodation when it enables the employee to perform the fundamental duties of the employment position. *LaChance,* 146 F.3d at 835. Additionally, the Equal Employment Opportunity Commission defines the term "reasonable accommodation" to include "modification or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position" and "modifications and adjustments that enable a covered entity's employee with a disability to enjoy the equal benefits and privileges of employment as other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(*o*)(ii) & (iii) (1995). Plaintiff is not arguing that he was unable to perform the essential functions of a loader. In fact, it is undisputed that Plaintiff performed his loader functions very well. Instead, Plaintiff claims that Defendant failed to provide a reasonable accommodation during his termination proceeding. In fact, it appears from the Complaint that Plaintiff's claim is not that defendant failed to accommodate his disability during its investigation, but rather that Defendant refused to give Plaintiff the opportunity to explain his innocence. However, the Court need not determine whether Defendant properly investigated the graffiti incident or gave Plaintiff an opportunity to be heard. Terminating an employee without giving him a hearing does not violate the ADA. Because Plain-

---

**1.** Defendant argues that when an employee engages in misconduct in violation of the employer's policies, they are no longer "qualified" for the position within the meaning of the ADA. *See Moore v. Bd. of Educ. of the Johnson City Schools,* 134 F.3d 781 (6th Cir. 1998); *Palmer v. Circuit Court of Cook County,* 117 F.3d 351, 352 (7th Cir.1997). While the Court finds this argument persuasive, it need not decide this issue.

tiff's disciplinary meeting was not part of his essential job functions, Defendant was under no obligation to provide him with an interpreter. *See Cole v. Teel Plastics. Inc,* No. 04–C–633C, 2005 WL 1378911 (W.D.Wis.2005) (holding a failure to provide an interpreter during disciplinary proceedings and termination was not a violation of the ADA). Therefore, the Court grants Defendant's motion for summary judgment as to Count I.

## IV. Retaliation

█ Plaintiff also makes a claim for unlawful retaliation, pursuant to Fla. Stat. § 448.102(3). The statute states, in relevant part, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to or participated in, any activity, policy or practice of the employer which is in violation of the law, rule or regulation." Fla. Stat. § 448.102. To state a claim for retaliation, a Plaintiff must show "1) that he engaged in protected conduct, 2) that he suffered an adverse employment action and 3) that there was a causal link between his engagement in protected activities and the adverse employment action." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir.2000).

Here, Plaintiff claims that he was retaliated against because he 1) voiced his concerns regarding Defendant's failure to remove graffiti from the mens' bathroom wall, and 2) sought accommodation for his disability. (Compl.¶¶ 41, 46.) Plaintiff claims that Defendant retaliated against him by refusing to accommodate him with a sign language interpreter, denying him access to the store, terminating his employment, and summoning law enforcement officials to intimidate and harass Plaintiff. (Compl.¶¶ 40–50). Plaintiff claims that the causal connection between his protected activity and his termination is "a reasonable inference" and that nothing more is required. Defendant responds that Plaintiff has failed to present any evidence of a causal link between his protected conduct and his firing.

█ Even assuming without deciding that Plaintiff has established the first two prongs of the retaliation test, the Court finds that the undisputed evidence fails to show a causal connection between Plaintiff's protected conduct and his termination. All of the evidence before the Court supports Defendant's claim that it terminated Plaintiff because he wrote graffiti on the bathroom wall. DSOF ¶¶ 11–13. Plaintiff even states, "[i]t is undisputed that Wal–Mart terminated Plaintiff's employment for allegedly writing sexual graffiti on Wal–Mart's men's bathroom." Pl.'s Resp. ¶ 13. Therefore, Plaintiff's claim for retaliation must fail.

## V. Negligent Infliction of Emotional Distress

█ .Finally, Plaintiff makes a claim for negligent infliction of emotional distress. In Florida, these claims are governed by the judicially-created "impact rule" designed to assure the validity of claims for emotional distress. *Int'l Ocean Tel. Co. v. Saunders,* 32 Fla. 434, 14 So. 148 (1893). "The impact rule . . . requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.' " *Southern Baptist Hosp. of Fla. v. Welker,* 908 So.2d 317 (Fla.2005). "The underlying basis for the rule is that allowing recovery for injuries resulting from purely emotional distress would open the floodgates for fictitious or speculative claims." *Id.* At 362. Though the courts have carved out limited

exceptions to the impact rule in extraordinary circumstances,[2] they have been "narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and the lack of countervailing policy concerns, have surmounted the policy rational undergirding application of the impact rule." *Rowell v. Holt,* 850 So.2d 474, 478 (Fla.2003).

 Here, Plaintiff has failed to present any evidence to suggest that his emotional distress flowed from a physical injury. Plaintiff's complaint alleges that Defendant caused him emotional distress by: 1) refusing to allow Plaintiff and his fiancee public access to its store, 2) refusing to provide Plaintiff with a language interpreter when he was hired, tested and terminated, and 3) having him escorted from the store by law enforcement officers. None of these allegations qualify as a physical injury. Additionally, Plaintiff's claims do not fall into the narrow exceptions of the "impact rule" as he makes no claim that his emotional distress was foreseeable, or excessive. Furthermore, the Court finds that Plaintiff's claim is exactly the type of speculative claim which the "impact rule" was meant to prevent. Finally, the Court notes that Plaintiff has failed to properly support his allegations that he is, in fact, suffering form "severe emotional distress" and "past and present physical pain and suffering which are great and grievous and which will continue indefinitely into the future." (Comp.¶ 55.) Therefore, the court will grant Defendant's Motion for Summary Judgment with respect to Count III.

## VI. Conclusion

The Court finds that there is no genuine issue of disputed fact and the Defendant is entitled to Summary Judgement on all of Plaintiff's claims. All additional motions are denied as moot.

Accordingly, **it is ORDERED,**

1. Defendant's Motion for Summary Judgment (Dkt.15) is **GRANTED.**

2. Plaintiff's Motion for Protective Order, Motion to Quash (Dkt.14) is **DENIED** as moot.

3. Plaintiff's Motion to Amend the Complaint (Dkt.27) is **DENIED** as moot.

4. The Clerk is directed to enter final judgment for Defendant and close this file.

---

**2.** *See Champion v. Gray,* 478 So.2d 17 (Fla.1985)(allowing recovery when a plaintiff was in the sensory perception of physical injuries suffered by a close family member); *Kush v. Lloyd,* 616 So.2d 415 (Fla.1992)(finding the rule inapplicable in action for wrongful birth); *Gracey v. Eaker,* 837 So.2d 348 (Fla.2002) (impact rule inapplicable for breach of statutory duty of confidentiality to a psychotherapy patient).